UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LAVELLE MALONE,

Plaintiff,

v.

LLOYD ARNOLD, BRIAN ENGLISH,
JANE DOE, DWYER, MCGEE,

Defendants.

CAUSE NO. 3:26-CV-607-PPS-AZ

OPINION AND ORDER

Lavelle Malone, a prisoner without a lawyer, filed an amended complaint (ECF
9) along with a motion for preliminary injunctive relief (ECF 10). "A document filed *pro
se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must
be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson
v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless,
under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it
if the action is frivolous or malicious, fails to state a claim upon which relief may be
granted, or seeks monetary relief against a defendant who is immune from such relief.

Malone alleges the entire Miami Correctional Facility (MCF) was placed on
lockdown in November 2025 because an inmate was stabbed and killed. Subsequently,
Malone and the other inmates were "not afforded out-of-cell recreation during the
lockdown." ECF 9 at 3. He claims several of the other dorms were later allowed to
"resume normalcy" while N-dorm, P-dorm, and L-dorm were not. *Id*. Malone alleges

Unit Team Manager (UTM) Dwyer hasn't provided him with "periodic meaningful thirty (30) day reviews" and that he has admitted, in writing, that N-dorm's classification status is "being maintained as a blanket housing unit lockdown to bypass the individual 30 day classification reviews/hearings required by Policy 02-01-111." *Id.* at 4. Malone describes this as an "illegal Defacto administrative segregation status" and insists that UTM Dwyer has violated his Fourteenth Amendment Due Process rights and the prohibition against cruel and unusual punishment under the Eighth Amendment. *Id.* at 4-5.

Malone also complains about a lack of medical treatment for the pain in his left arm/shoulder blade he says he is experiencing "due to having to sleep on a thin mattress on a steel bunk since Nov. 2025 and still continuing to do so, due to N-dorm is still on indefinite lockdown." *Id.* at 4. Malone alleges he submitted a single health care request about his left arm/shoulder pain to Jane Doe Nurse on February 22, 2026, but he hasn't been "seen by medical." *Id.*  That health care request form is attached to the complaint and includes a response dated April 8, 2026, from medical staff which states, "Refused in house triage." ECF 9-1 at 2.

Malone has sued Commissioner of the Indiana Department of Correction Lloyd Arnold, Warden of the Miami Correctional Facility Brian English, Deputy Warden of Operations Mr. McGee, Unit Team Manager Mr. Dwyer, and Nurse Jane Doe for monetary damages and to "[i]mpose a Preliminary Injunction on Mr. English Warden of Miami Corr. Fac. to stop placing inmates on this indefinite lockdown without providing yard recreation/out-of-cell-time." *Id.* at 6. Similarly, the motion for preliminary

2

injunction asks the court to "order defendants . . . to provide plaintiffs and other inmates in N-housing unit, P-housing unit, L-housing unit 3/4 side with at least one full hour of out-of-cell exercise per day and other recreational opportunities." ECF 10 at 2.[1]

As an initial matter, I fail to see how Malone's claim for inadequate medical care against Nurse Jane Doe is related to his Fourteenth Amendment Due Process claim or Eighth Amendment conditions-of-confinement claim against the remaining Indiana Department of Correction (IDOC) officials. "Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The Seventh Circuit Court of Appeals has repeatedly urged district courts to "be alert" to the issue of unrelated claims. *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). In *Owens*, the court "warned that district courts should not allow inmates to flout the rules for joining claims and defendants, *see* Fed. R. Civ. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Id.*

Malone attempts to tie his lack of medical care claim against Nurse Jane Doe to the rest of his allegations by asserting that his shoulder blade pain is due to the "indefinite lockdown" because he has had to sleep on a thin mattress in his cell. But he doesn't explain how the lockdown status and lack of yard recreation/out-of-cell time has anything to do with the types of mattresses in N-dorm (or in his own cell for that matter). Nor is it reasonable to infer that the mattresses in N-dorm would be changed

---

[1] The motion for preliminary injunction names Aaron Smith as a co-plaintiff and includes his signature, but Smith is not a party to this lawsuit and did not sign the amended complaint.

simply because the lockdown is lifted. Importantly, he doesn't allege he told any of the IDOC defendants about his "thin" mattress or suggest they were aware of a problem with it. He attaches grievances to the complaint, but none of them mention a mattress or refer to his medical issues. *See* ECF 9-1 at 3, 6. Malone also attached a February 22, 2026 health care request form that references pain and tingling in his shoulder, but it doesn't mention a mattress at all or suggest a faulty mattress is related to his medical concerns. *See id*. at 2. Based on these facts, I find that Malone's medical claim against Nurse Jane Doe is unrelated to his claims against the remaining defendants.

When a plaintiff files a complaint with unrelated or mis-joined claims, I would normally allow him to decide which properly joined and related claims to pursue in the current case and when (or if) to bring the other claims in separate suits. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (explaining that a judge can direct plaintiff "to file separate complaints, each confined to one group of injuries and defendants."). However, because Malone has filed a motion for preliminary injunctive relief along with his complaint suggesting the matter is urgent, I will choose for him. The obvious choice in most cases would be a medical claim if a plaintiff complained of ongoing medical concerns. However, in this case, Malone has only requested injunctive relief related to the "indefinite lockdown" and the alleged lack of "yard recreation/out-of-cell-time." ECF 9 at 6; *see also* ECF 10 at 2 (motion for preliminary injunction requesting "at least one full hour of out-of-cell exercise per day and other recreational opportunities"). Neither his complaint nor his motion for preliminary injunction requests medical care as a form of relief. Accordingly, I will dismiss without prejudice

the unrelated medical care claim against Nurse Jane Doe. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) ("Complaints like this one from Owens should be rejected, either by severing the action into separate lawsuits or by dismissing improperly joined defendants.") (internal citations omitted); *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."). Malone may bring a separate lawsuit regarding his medical issues against Nurse Jane Doe—subject to all fees and requirements of the Prisoner Litigation Reform Act—if he wishes.

Turning to the merits of the remaining claims, Malone asserts the indefinite lockdown has essentially transformed his housing location and classification status into "de facto" administrative segregation. *See* ECF 9 at 4. The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In other words, "disciplinary segregation *can* trigger due process protections depending on the duration and conditions of segregation." *Jackson v. Anastasio*, 150 F.4th 851, 858 (7th Cir. 2025) (quoting *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (emphasis in original)). Both the duration and the severity of the conditions themselves must be considered when determining whether the prisoner's placement in segregation triggers due process

protections—the length of time must be "substantial" and the conditions must be "unusually harsh." *Id*.[2]

Similarly, while inmates don't generally have a liberty interest in "avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes[,]" *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005)). However, due process may be implicated depending on the duration and the harshness of the conditions. *See e.g., Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017); *Marion*, 559 F.3d at 697-98 & nn.2–3 (same and collecting cases). Once an inmate shows a particular placement implicates a liberty interest, he has a right to a meaningful review, which periodically "evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determines whether that placement remains warranted.'" *Isby*, 856 F.3d at 527 (quoting *Toevs v. Reid,* 685 F.3d 903, 913-14 (10th Cir. 2012)).

Thus, Malone must show the combination of the length and conditions of his present confinement raises due process concerns. With regard to length, Malone says he has been held on "indefinite lockdown" since November 2025, which is sufficiently long to warrant a closer look. However, although the conditions Malone describes are harsher than those associated with ordinary prison life, they aren't unduly or atypically

---

[2] The Seventh Circuit has "not yet affirmatively adopted any minimum duration of disciplinary segregation that automatically implicates a liberty interest, regardless of other conditions of confinement[,]" *Jackson*, 150 F.4th at 859, but cases suggest "solitary confinement of up to one year" lies close to that "outer limit under current law." *Id*. at 860.

so. His complaint says only that inmates on N-dorm aren't afforded yard/out-of-cell recreation and that the mattresses are thin. "Courts have deemed an inmate's liberty interest implicated only where the conditions are far more restrictive." *Earl v. Racine Cty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (collecting cases and finding conditions where plaintiff was "allowed limited possessions, dressed in a 'suicide-proof gown,' served meals on Styrofoam trays, kept in continuous light for the first 24 hours, and closely and constantly monitored by prison staff" didn't trigger due process concerns); *see also Sandin*, 515 U.S. at 484 (conditions must impose an "atypical and significant hardship" on inmates); *Jackson,* 150 F.4th at 858 (conditions must be "unusually harsh" to trigger due process concerns). As such, Malone hasn't stated a plausible Fourteenth Amendment Due Process claim.

I will also consider whether the conditions of Malone's confinement violated the Eighth Amendment.[3] The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend*, 522 F.3d at 773 (citations omitted). An officer can violate the Constitution if he or she exhibits deliberate indifference to hazardous conditions that may seriously harm an inmate. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in

---

[3] *See Townsend*, 522 F.3d at 772-73 ("The issue of cell conditions in TLU is best analyzed as a claim brought under the Eighth Amendment.").

> covering the subjective component of the inquiry, the inmate must prove
> that prison officials acted with deliberate indifference—that they knew of
> and disregarded this excessive risk of harm to the inmate.

*Thomas*, 2 F.4th at 719–20 (internal quotation marks, citations, and brackets omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted). "Generally speaking, challenges to conditions of confinement cannot be aggregated and considered in combination unless 'they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.'" *Johnson v. Prentice,* 29 F.4th 895, 904 (7th Cir. 2022) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

Allegations of vague "overall conditions" aren't sufficient. *Id*. Regarding state of mind, "[d]eliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton*, 44 F.4th at 615.

Malone alleges he has been denied access to "yard recreation/out-of-cell-time" (ECF 9 at 3) while on lockdown in N-dorm. He says he suffered "physical and psychological injuries" (*id*. at 4), but he doesn't describe any of them except shoulder pain, and he blames that on his thin mattress rather than on a lack of yard recreation or out-of-cell time. "Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened." *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996); *see also Sanders v. Moss*, 153 F.4th 557, 569 (7th Cir. 2025) ("[A]ccess to *exercise* is an essential human need . . . .") (emphasis added); *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015) (recognizing that "lack of exercise can rise to a constitutional violation where movement is denied and muscles are allowed to atrophy and the health of the individual is threatened.") (cleaned up).

However, Malone's amended complaint doesn't allege he is unable to exercise or move within his cell. Nor does it plausibly allege his health has been jeopardized due to the deprivation of yard recreation or out-of-cell time. *See, e.g., Johnson*, 29 F.4th at 902 (finding three-year aggregate denial of yard privileges was not unconstitutional); *see also Smith*, 803 F.3d at 313 (recognizing the "significant difference between a lack of outdoor recreation and an inability to exercise" and finding no constitutional deprivation where the plaintiff failed to allege his movements were severely restricted

9

"to the point that he is unable to exercise inside his cell"). Thus, Malone hasn't stated a plausible Eighth Amendment conditions-of-confinement claim either.[4]

The amended complaint doesn't state any claims for which relief can be granted. However, if Malone believes he can state a claim based on, and consistent with, the events described in this complaint, he may file a second amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file a second amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Second Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form. He must <u>only</u> include claims that are related.

As a final matter, I must address the separate motion for preliminary injunction. ECF 10. A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution;

---

[4] The only other description Malone provides of his cell is that his mattress is thin. Even assuming this condition is sufficiently serious—a conclusion I do not reach—he hasn't plausibly alleged he made any of the IDOC defendants aware of the thinness of his mattress or his concerns related to it. *See, e.g., Rasho*, 22 F.4th at 710 (deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

(2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, I need not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the merits must be assessed as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.  With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, only then may I "consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully,* 977 F.3d at 613 (quotation marks omitted).

11

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, my ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

In his motion, Malone asks me to "order defendants, their successors, agents, employees, and all persons acting in concert with them to provide plaintiffs and other inmates in N-housing unit, P-housing unit, L-housing unit 3/4 side with at least one full hour of out-of-cell exercise per day and other recreational opportunities." ECF 10 at 2. But, as set forth in detail above, Malone's amended complaint doesn't state any plausible Eighth or Fourteenth Amendment claims related to the alleged denial of yard recreation and out-of-cell time. Therefore, he has no chance of success on the merits based on his current filings. *See Pritzker*, 973 F.3d at 762 ("mere possibility of success [on the merits] is not enough"); *see also Univ. of S. Ind.*, 43 F.4th at 791 (when evaluating a motion for preliminary injunction, the court need not accept all allegations as true or even give the filer the benefit of reasonable inferences in his favor — the likelihood of success on the merits analysis is "often decisive").

**ACCORDINGLY:**

(1) The motion for preliminary injunction (ECF 10) is DENIED;

(2) The unrelated medical claim is DISMISSED from this lawsuit;

(3) Nurse Jane Doe is DISMISSED from this lawsuit;

(4) Lavelle Malone is GRANTED until **August 21, 2026**, to file a second amended complaint with only related claims; and

(5) Lavelle Malone is CAUTIONED that if he doesn't do so by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state any claims for which relief can be granted.

SO ORDERED.

ENTERED: July 22, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

13